## Case No. 15,418.

### UNITED STATES v. HUGHES.

[1 Bond. 574.] [1]

District Court, S. D. Ohio.  Oct., 1864.

REBELLION—PROCLAMATION OF PARDON—TREASON.

1. The proclamation of the president of the United States, of December 8, 1863 [13 Stat. 737], extending amnesty to persons who directly or indirectly participated in rebellion, included within its terms a citizen of the state of Ohio, indicted for treason against the United States.

2. A citizen who has complied with the requirements of such proclamation, is not excluded from its protection by a subsequent explanatory proclamation of the president, issued after such compliance, debarring persons in civil custody from its operation.

[Cited in Knapp. v. Thomas, 39 Ohio St. 382.]

[This was an indictment against Edward L. Hughes upon the charge of treason. On the part of the United States a general demurrer to the defendant's plea of pardon was interposed, upon which the case now comes before the court.]

Flamen Ball. U. S. Dist. Atty.

J. H. Thompson, for defendant.

LEAVITT, District Judge.  The indictment against the defendant was returned

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

and filed in this court on March 9, 1863. In this indictment the defendant is charged in two counts with the crime of treason. In the first count, after a recital of the fact of war or rebellion being carried on against the United States by the so-called Confederate States of America, it is averred that the defendant, being a citizen of Ohio, and as such owing allegiance to the government of the United States, on July 16, 1863, at the county of Pike, in said state, and within the Southern district of Ohio, "wickedly, maliciously, and traitorously, did ordain, prepare, and levy war against the United States of America." The second count is similar to the first in its recitals, but avers, as a specific or overt act of treason, that the defendant, on the day before named, at the same county, wickedly and traitorously gave aid and comfort to John Morgan and those associated with him in a forcible and armed invasion of the state of Ohio, prosecuted under the authority of said Confederate States of America, "by guiding, piloting, and escorting the said Morgan and his associates through certain portions of said state." The defendant having been arrested on said charge has appeared and filed, first, the plea of not guilty; and, secondly, a plea of pardon by the president of the United States by the operation of the amnesty proclamation of December 8, 1863. This plea recites the proclamation in full, and then avers that the defendant, on March 1, 1864, appeared in this court and took and subscribed the oath prescribed in said proclamation, in virtue of which he claims that he can not be held to answer to the charge for which he is indicted. The plea also avers that the defendant is not within any of the exceptions set forth in the proclamation.

To the defendant's plea of pardon, the district attorney, in behalf of the United States, has interposed a general demurrer. And this presents the question now to be decided by the court. In the argument upon the demurrer, the only points insisted on by the district attorney, were: (1) That it was not within the scope and intention of the proclamation of December 8, 1863, that citizens of a loyal state charged with treason against the United States should be included in the amnesty or act of grace which it extended to others. (2) That if included in such proclamation, the amended or explanatory proclamation of March 26, 1864 [13 Stat. 741], excludes the defendant from all its benefits.

The first point stated is to be determined by the language of the proclamation of December 8, 1863. If, by a fair construction of its terms, the defendant is within its scope, and has complied with the conditions on which it offers a pardon, he is legally entitled to its full benefits, whatever may be the views of others as to the policy of such a sweeping amnesty. Now the proclamation, after some recitals which it is not necessary to notice, is in these words: "I, Abraham

Lincoln, president of the United States, do proclaim, declare, and make known to all persons who have directly, or by implication, participated in the existing rebellion, except as hereinafter excepted, that a full pardon is hereby granted to them and each of them, with restoration of all rights of property, except as to slaves, and in property cases where rights of third persons have intervened, and upon the condition that every such person shall take and subscribe an oath, and thenceforward keep and maintain said oath inviolate." Then follows the form of the oath to be taken by the person wishing to avail himself of the amnesty. Without reciting it at length, it may be stated that it is in substance an oath to support the constitution of the United States, and faithfully to comply with all acts of congress and all proclamations of the president, looking to the suppression of the rebellion. There seems to be no ground for a doubt, that the defendant is within the terms of the amnesty. The offer of grace is "to all persons who have directly or by implication participated in the existing rebellion." Then follows an enumeration of "the persons excepted from the benefits of the offer of amnesty. It may be noted here that the defendant's plea of pardon avows expressly, as it was necessary to do, that he is not one of the persons exempted from the operation of the amnesty. The demurrer to the plea admits the truth of this averment; and if its truth did not otherwise appear, the court would be bound to receive it as true. But it is clear by reference to the proclamation, that the case of a citizen or resident of a loyal state, charged with treason committed within such state, is not within the enumerated exceptions. These exceptions are minute and very clearly stated in the proclamation, but by no allowable canon of construction is the defendant within the scope or meaning of the words used. Such, it is believed, was the view of all intelligent men when the proclamation was first promulgated. Such certainly was the opinion of the attorney-general of the United States, who issued official instructions to the district attorneys to dismiss all prosecutions where the person accused shall take the oath of allegiance and fidelity to the Union, as provided for in the proclamation.

The second point made by the district attorney in support of the demurrer to the defendant's plea of pardon, is clearly not sustainable. This point, as before stated, is, in substance, that although the defendant may be within the terms, and entitled to the benefit of the original amnesty proclamation, he is excluded from these benefits by the supplemental or explanatory proclamation of March 26, 1864. This proclamation, after reciting that it had "become necessary to define the cases in which insurgent enemies are entitled to the benefits" of the proclamation of December 8, 1862, declares that it "does not apply to persons taking the prescribed oath of allegiance and fidelity to the Union, who are in military, naval, or civil confinement or custody, or under bonds, or on parole of the civil, military, or naval authorities, or agents of the United States, as prisoners of war, or persons detained for offenses of any kind, either before or after conviction."

The only inquiry before the court as to this point is whether the second or explanatory proclamation can in any way affect the status or rights of this defendant. It has been already stated that the plea avers, and such are the facts of the case, that after the return of the indictment against the defendant, namely, on March 1, 1864, he appeared in court and took the oath prescribed. The explanatory proclamation bears date the 26th of that month. It will be obvious, therefore, that when the defendant took the oath, and thereby claimed the benefits of the president's offered amnesty, the first proclamation was in full force. Now, it is a proposition too clear to require arguments or authorities to sustain it, that if the defendant, by a compliance with the terms of mercy proposed in the first proclamation, has entitled himself to its benefits, no subsequent act of the president, or of any other department of the government, could deprive him of the rights so acquired. To give the second proclamation a retroactive operation, and thus doom the defendant to a punishment from which he had been legally exonerated, would be in violation alike of reason and of law. If it were true that the high crime charged against the defendant could be sustained by satisfactory evidence, it is far better that he should escape punishment than that a plain principle of law should be set at naught.

I am clear, therefore, that the special plea of the defendant must be sustained, and the demurrer overruled.